UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SMITHERMAN,

                Plaintiff,        Civil Action No. 17-12607
                                      Honorable Marianne O. Battani
                                      Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 19]**

Plaintiff Kevin Smitherman ("Smitherman") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #16, #19), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Smitherman is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #19**) be **GRANTED**, Smitherman's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Smitherman was 52 years old at the time of his alleged onset date of November 27, 2014, and at 5'11" tall weighed approximately 185 pounds during the relevant time period. (Tr. 213, 217). He completed high school and one year of community college. (Tr. 35, 218). Over the years, he performed work as a general laborer, furniture salesman, insurance sales representative, and press operator, before stopping work altogether when he had a heart attack in November 2014. (Tr. 61-62, 217-18). He now alleges disability primarily as a result of congestive heart failure, heart disease, pulmonary embolism, and hypertension. (Tr. 217).

After Smitherman's applications for DIB and SSI were denied at the initial level on August 21, 2015 (Tr. 99-114), he timely requested an administrative hearing, which was held on September 8, 2016, before ALJ Elias Xenos (Tr. 27-67). Smitherman, who was represented by attorney Erica Riggs, testified at the hearing, as did vocational expert Don Harrison. (*Id.*). On October 25, 2016, the ALJ issued a written decision finding that Smitherman is not disabled under the Act. (Tr. 13-21). On June 14, 2017, the Appeals Council denied review. (Tr. 1-5). Smitherman timely filed for judicial review of the final decision on August 10, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Smitherman's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Smitherman is not disabled under the Act. At Step One, the ALJ found that Smitherman has not engaged in substantial gainful activity since November 27, 2014 (the alleged onset date). (Tr. 15). At Step

3

Two, the ALJ found that he has the severe impairments of atrial fibrillation, congestive heart failure, coronary artery disease, dyslipidemia, myocardial infarction, pulmonary embolism, and hypertension. (*Id.*). At Step Three, the ALJ found that Smitherman's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 16).

The ALJ then assessed Smitherman's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can only occasionally climb ladders, ropes, or scaffolds; can only occasionally crawl, kneel, stoop, and crouch; cannot work around unprotected heights; cannot tolerate exposure to extreme cold or heat; can tolerate only occasional exposure to wetness, humidity, and pulmonary irritants (such as fumes, odors, dust, gases, and poorly ventilated areas); and cannot tolerate any exposure to toxic/caustic chemicals. (*Id.*).

At Step Four, the ALJ concluded, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Smitherman is capable of performing his past relevant work as a furniture salesman and insurance sales representative. (Tr. 20). As a result, the ALJ concluded that Smitherman is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In his motion for summary judgment, Smitherman argues that: (1) the ALJ erred at Step Three in concluding that he does not meet or medically equal Listing 4.02; and (2) the ALJ improperly evaluated his subjective complaints. Each of these arguments is addressed below.

### *1. Substantial Evidence Supports the ALJ's Step Three Analysis*

Smitherman first argues that the ALJ erred at Step Three in "neglect[ing] to properly analyze or explain why [his] impairments do not meet or medically equal Listing 4.02(A)(B)." (Doc. #16 at 12). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). However, the burden is on the claimant to prove that his impairments meet or medically equal a particular listing. *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 645 (6th Cir. 2006); *Gower v. Comm'r of Soc. Sec.*, 2015 WL 163830, at *26 (E.D. Mich. Jan. 13, 2015).

Here, to meet the criteria of Listing 4.02 ("Chronic heart failure"), Smitherman must – in relevant part – establish that, while on a regimen of prescribed treatment, he satisfies the requirements of both A and B below:

> A. Medically documented presence of one of the following:
>
> 1. Systolic failure …, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure);
>
> \* \* \*
>
> B. Resulting in one of the following:
>
> \* \* \*
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period …, with evidence of fluid retention … from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as

> hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization ….

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02. The ALJ specifically considered this listing in his decision, concluding that Smitherman "does not have chronic heart failure or ischemic heart disease meeting the listings at Sections 4.02 and 4.04, respectively." (Tr. 16). Smitherman finds this evaluation insufficient, arguing that this summary conclusion "leaves this Court to speculate as to which of the elements of Listing 4.02(A)(B) the ALJ apparently felt were not satisfied or equaled." (Doc. #16 at 14). The Court disagrees.

To begin with, although the ALJ's Step Three decision is relatively brief, the law is clear that "[a]n ALJ does not have to cite to every piece of evidence to show [he] considered it … or arrange the decision in a particular manner to show [he] analyzed the evidence." *Gower*, 2015 WL 163830, at *28 (citing *Kornecky*, 167 F. App'x at 508 and *Jones v. Barnhart*, 364 F.3d 501, 505 (3rd Cir. 2004)). While it might be preferable for an ALJ to explicitly tie his discussion of a relevant listing's elements to specific medical evidence, "the Sixth Circuit has allowed courts to scan the decision for statements that support the step three analysis, and numerous district and circuit courts have agreed" on this approach. *Johnson v. Comm'r of Soc. Sec.*, 2015 WL 730094, at *26 (E.D. Mich. Feb. 19, 2015). Thus, "a court can find the listing analysis sufficient by looking at the entire opinion," rather than limiting its review to any particular section of the ALJ's decision. *Id.* As a result, "an ALJ need not fully discuss the Step III findings so long [as] 'the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that the Plaintiff did not meet the requirements for [the] listing.'" *Vandenboss v. Comm'r of Soc. Sec.*, 2015 WL 3823558, at *5 (E.D. Mich. June 18, 2015) (quoting *Jones*, 364 F.3d at 505).

Here, a review of the ALJ's decision as a whole makes clear that he appropriately considered the evidence relevant to his Step Three analysis. To begin with, at Step Three, the ALJ properly relied on the opinion of state agency physician Delois Daniels, M.D. (Tr. 16, 73-79). Dr. Daniels reviewed the medical evidence of record, including Smitherman's echocardiograms, cardiac catheterizations, hospitalizations, and specific ejection fraction test results. (Tr. 73-75, 78-79). In light of this evidence, Dr. Daniels identified chronic heart failure as a severe impairment, and he specifically considered whether Smitherman meets or medically equals Listing 4.02 (chronic heart failure). (Tr. 75-76). In doing so, Dr. Daniels noted that Smitherman's cardiac symptoms improved over time, as reflected in higher ejection fraction results, and he specifically concluded that Smitherman's impairment "does not meet/equal listing 4.02." (Tr. 75). The ALJ supportably and reasonably gave Dr. Daniels' opinion great weight[1] and relied on it in finding that Smitherman's impairments do not meet or medically equal Listing 4.02. (Tr. 16, 19).

In arguing that he meets Listing 4.02, Smitherman asserts that "the record documents multiple ejection[] [fractions] of 30%." (Doc. #16 at 14). It is true that a December 3, 2014 echocardiogram noted moderately severe systolic failure and diastolic dysfunction, with an ejection fraction of 30-35%. (Tr. 310). Similarly, a January 26, 2015 echocardiogram revealed an ejection fraction of 30-35%. (Tr. 388-89). And, a June 1, 2015 echocardiogram also estimated an ejection fraction of 30-35%. (Tr. 394). However, Smitherman appears to concede that the December 2014 and January 2015 test results were not obtained "during a period of stability," as required by Listing 4.02(A)(1), and thus do not satisfy the listing's requirements.

---

[1] Smitherman does not argue that the ALJ erred in affording great weight to this opinion, and, thus, any such challenge is waived. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

8

(Doc. #16 at 14-15 (arguing only that an ejection fraction of 30-35% in June 2015 was recorded during a period of stability)). And, indeed, the December 2014 hospitalization documenting an ejection fraction of 30-35% occurred upon "sudden onset" of syncope and shortness of breath. (Tr. 79, 309). Similarly, the January 2015 results were obtained during an "exacerbation" of Smitherman's chronic health failure. (Tr. 78, 302). Thus, neither of these two ejection fractions satisfy Listing 4.02(A)'s requirements that they be obtained "during a period of stability."

Moreover, even considering Smitherman's June 1, 2015 ejection fraction results of 30-35%,[2] Listing 4.02(B) requires that a claimant's ejection fraction of 30% or less results in "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12-month period …, with evidence of fluid retention … from clinical and imaging assessments at the time of the episodes, requiring acute extended physical intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization …." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02. Here, Smitherman identifies hospital visits from December 2014, January 2015, June 2015, and August 2015 in an effort to satisfy Listing 4.02(B)'s requirements. (Doc. #16 at 15 (citing Tr. 210, 302, 312, 451, 490)). A closer review of the treatment notes from each of these hospitalizations, however, reveals that they fail to support Smitherman's argument.

As Smitherman points out, he was admitted to Sinai Grace Hospital from December 2-5, 2014, with syncope and shortness of breath. (Tr. 310). But, while he was assessed with new-

---

[2] Although Smitherman repeatedly cites to ejection fraction results of 30-35% between December 2014 and June 2015, the record demonstrates that these results subsequently improved, as the ALJ noted. (Tr. 20). For example, an echocardiogram performed on June 4, 2015, showed an ejection fraction of 45-50%. (Tr. 522-23). An Equilibrium Radionuclide Angiography performed on July 15, 2015, showed a left ventricular ejection fraction of 48.8%. (Tr. 430). And, an August 22, 2016 echocardiogram estimated an ejection fraction of 40%. (Tr. 606).

9

onset congestive heart failure at that time, it was also noted that he did not appear to be in any acute overt heart failure. (*Id.*). Rather, a CT scan revealed a pulmonary embolism. (Tr. 338). Similarly, in January 2015, Smitherman presented to the emergency room with difficulty breathing, as well as "a cough productive of yellow sputum" and "subjective fevers and sweats." (Tr. 312). He denied any leg swelling, and after reviewing an ECG and chest x-rays, the treating physician concluded that Smitherman had influenza. (Tr. 314). The June 2015 record highlighted by Smitherman does list an ejection fraction of 30%, but it is not entirely clear when that result was obtained, and the record also indicates that acute coronary syndrome was ruled out. (Tr. 490). And, finally, the August 2015 hospitalization record does document chest pain and hypertension, as Smitherman asserts (Doc. #16 at 15 (citing Tr. 451)), but these conditions were merely listed as discharge diagnoses, along with acute respiratory infection. In summary, the records cited by Smitherman simply do not reflect three or more episodes of acute congestive heart failure with evidence of fluid retention and therefore do not satisfy Listing 4.02(B)'s requirements. For all of these reasons, Smitherman has not identified any error in the ALJ's Step Three analysis warranting remand. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (declining to remand where plaintiff had "not shown that his impairments met or medically equaled in severity any listed impairment ….").

### 2. *Substantial Evidence Also Supports the ALJ's Evaluation of Smitherman's Subjective Complaints*

In his decision, the ALJ found that Smitherman's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 18).

Smitherman cites to Social Security Ruling ("SSR") 96-7p[3], 1996 WL 374186 (July 2, 1996), in arguing that this conclusion is mere "boilerplate" and is not supported by substantial evidence. (Doc. #16 at 16-18). The Court disagrees.

The Sixth Circuit has held that determinations of credibility rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016). In making an adjudication, a "single, conclusory statement" asserting consideration of the individual's symptoms or reciting the factors in the regulations is insufficient. *Id.* at *9. Instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

---

[3] SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The Court will therefore reference this later ruling in its analysis.

11

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

In his decision, the ALJ thoroughly discussed Smitherman's physical impairments, including his allegedly disabling cardiac symptoms. For example, the ALJ noted Smitherman's testimony regarding his decreased energy and the fact that he becomes short of breath when he walks up and down stairs or has too many fluids or too much salt. (Tr. 17, 56). The ALJ also discussed Smitherman's reports that his doctors "told him not to walk, ride a bike or use stairs[.]" (Tr. 17, 53). Additionally, the ALJ referenced Smitherman's testimony that he wore a cardiac life vest for approximately one year, beginning in April 2015. (Tr. 17, 53). At the same time, however, the ALJ concluded that Smitherman's allegations of disabling cardiac symptoms were at odds with the objective medical evidence, which demonstrates that his "heart functioning improved significantly after his initial cardiac events." (Tr. 20). Indeed, as set forth above, Smitherman's ejection fraction increased to 40% or higher by June 2015, less than one year after his December 2014 diagnosis of new onset congestive heart failure. (Tr. 18-19, 548-50, 577).

The ALJ also properly considered Smitherman's activities of daily living in evaluating his subjective complaints, noting that he "has remained quite active despite his impairments." (Tr. 20). For example, the ALJ referenced a June 2015 treatment record where Smitherman complained of chest pain and other symptoms after walking two miles. (Tr. 20, 348). The ALJ also noted Smitherman's testimony that he prepares breakfast for his parents, manages his own personal care independently, attends church, and visits his daughters. (Tr. 20, 55, 226, 229). Smitherman argues that the ALJ mischaracterized his activities of daily living, claiming that his "minimal activities are not comparable to typical work activities." (Doc. #16 at 18). But, a review of the records cited by the ALJ reveals no such "mischaracterization." (Tr. 55 ("cook

breakfast for my mom and dad" and "go to my daughter's house"), 226 (can attend to personal care), 229 ("go to church")). It was entirely appropriate for the ALJ to consider Smitherman's daily activities in evaluating his allegations of disabling symptoms. *See Cole v. Comm'r of Soc. Sec.*, 2016 WL 5334593, at *6 (W.D. Mich. Sept. 23, 2016) (finding that activities such as cleaning, cooking, making beds, fixing things "at her own pace" "are not indicative of an invalid, incapable of performing work related activities"); *Daniels v. Comm'r of Soc. Sec.*, 2018 WL 1535396, at *5 (E.D. Mich. Mar. 29, 2018) (ALJ may properly consider claimant's daily activities as one factor in assessing the credibility of his subjective complaints).[4]

In sum, in assessing Smitherman's credibility and the effects of his impairments, the ALJ fairly and properly considered the record evidence, including Smitherman's medical records, statements and activities of daily living. The Court finds no reason to disturb the ALJ's evaluation of Smitherman's subjective complaints because the ALJ observed Smitherman firsthand, and his assessment is supported by substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[4] Smitherman also takes issue with the ALJ's discussion of his use of a life vest, claiming that he "was telling the truth that he used to wear a life vest and at the time of the hearing he stopped wearing the life vest." (Doc. #16 at 17). Smitherman argues that "[t]his has no negative impact on [his] credibility, if anything it enhances it as his statement at the hearing was consistent with medical evidence of record regarding the life vest." (*Id.*). But, it does not appear to the Court that the ALJ drew a negative inference from Smitherman's use of the life vest; rather, he appeared to conclude – from the fact that Smitherman *stopped* using the life vest – that his condition had improved over time. (Tr. 17). Again, the record supports the ALJ's inference in this respect.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #19**) be **GRANTED**, Smitherman's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 7, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 7, 2018.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager